RECEIVED

DEC 1 5 2010

TONY R. MOORE, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.   5:10-cr-00374 |
| | * | |
| VERSUS | * | 18 U.S.C. § 1347 |
| | * | |
| | * | JUDGE     HICKS |
| | * | |
| EDOZIE OKEREKE | * | MAGISTRATE JUDGE HORNSBY |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNTS 1-16
### 18 U.S.C. § 1347
### HEALTH CARE FRAUD

A.    AT ALL TIMES RELEVANT HEREIN:

1.    The defendant, EDOZIE C. OKEREKE, is a Doctor of Podiatric Medicine who is licensed to practice podiatry by the State of Louisiana.

2.    The defendant, EDOZIE C. OKEREKE, owns and operates Family Foot and Ankle Clinic, a podiatry clinic, in Shreveport, Louisiana.

3.    The defendant, EDOZIE C. OKEREKE, devotes a large part of his podiatry practice to patients residing in nursing home facilities.

4.    The Medicare Program:

a.    Title 18, United States Code, Section 24, defines a "healthcare benefit program" as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual

or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."

b.    The Medicare Program ("Medicare" or "Program") is a federal healthcare benefit program that provides basic medical coverage for persons age 65 and over who are entitled to Social Security Benefits and for persons under age 65 who suffer from certain disabilities.

c.    Individuals who receive benefits under Medicare are often referred to as Medicare "beneficiaries."

d.    Medicare has two predominant parts:  Part A, which covers hospital care; and Part B, which pays a portion of the allowed amount of medically necessary physician and other services, including podiatric services.

e.    Medicare beneficiaries are typically charged a portion of the Part B charges submitted by a health care provider.

f.    The Center for Medicaid and Medicare Services ("CMS"), an agency of the Department of Health and Human Services, is the governmental body responsible for the administration of the Medicare program.

g.    CMS contracts with Pinnacle Business Solutions, Inc. to manage the Medicare program in Louisiana, including the processing of claims for services rendered to Medicare beneficiaries.

h.    In order to participate in the Medicare Provider Program, a health care provider must agree to submit to certain regulations issued by the United States and

Medicare.

i.    Upon a provider's acceptance into the Program, the provider is assigned a unique provider number for billing purposes. When a service is rendered by the provider, he or she submits a claim for reimbursement for those services. The provider number is submitted with all Medicare claims.

j.    The defendant, EDOZIE C. OKEREKE, is an approved provider under Medicare and is authorized to submit claims for reimbursement for covered podiatric services he renders to Medicare beneficiaries.

k.    A significant portion of the defendant's, EDOZIE C. OKEREKE, Medicare claims are for services allegedly performed in nursing home facilities.

l.    The defendant, EDOZIE C. OKEREKE, electronically submits claims for Medicare reimbursement using the electronic claims process.

5.    Current Procedural Terminology:

a.    The Physicians' Current Procedural Terminology ("CPT") Manual contains a listing of descriptive terms and identifying code numbers for the standardized reporting of medical services and/or procedures performed by health care providers. The purpose of the CPT Manual is to provide a uniform language that accurately describes medical, surgical, and diagnostic services in order to facilitate nationwide communications among healthcare workers, patients, and others. CPT codes are used by healthcare benefit programs for tracking and processing medical claims.

b.    The reimbursement rate for a provider's services is limited to a pre-

-3-

determined, maximum amount for each CPT code of service.

        c.       The CPT Manual contains several codes for evaluation and management (E&M) services provided by a health care provider. The E&M codes are further categorized and sub-categorized to define the following:  where the patient's service was provided; if the patient is new or established; and what level of service was provided by the physician.  E&M codes 99307 through 99310 establish the medical requirements for subsequent services provided to patients treated at nursing homes. The use of a higher CPT code level within a category increases the amount of reimbursement.

        d.       The higher the CPT code level within a category, the more substantial the services provided by the provider to the beneficiary, including a more thorough patient history, a more thorough physical examination, a more complex medical decision-making process, a more severe problem suffered by the beneficiary, and a lengthier amount of time typically spent with the patient and/or family.  A provider is required to ensure that all of the key components, including the history, examination, and medical decision making, meet or exceed the stated requirements for that particular level of E&M service to be charged.

        e.       In certain circumstances, a provider may add an E&M "modifier" to the E&M CPT code, signaling unique services were provided to a beneficiary.  One such modifier, modifier 25, is claimed when a significant, separately identifiable evaluation and management service is performed by the same provider on the same day as the procedure or other service.  Modifier 25 is reported when the additional service is above and beyond

-4-

the usual pre-service and post-service work associated with the procedure.

   f.  Medicare reimbursement requests for services rendered by a provider are submitted on claim form, which is required to include the diagnosis, date of service, procedure code, type of service provided, charges, and the name of and provider number for the health care provider. This form requires the provider to certify that the services provided were medically necessary and that the claimed services are true and accurate. The form further warns that any false claim, documents, or concealment of a material fact may be prosecuted.

   6.  <u>Foot Care</u>:

   a.  Routine foot care, including the cutting or removal of corns and/or calluses; the trimming, cutting, clipping, or debriding of nails; other hygienic or preventative maintenance care; and any other service performed in the absence of localized illness, injury, or symptoms involving the foot is not a covered service under Medicare.

   b.  The debridement of a nail is the process of reducing the thickness and length of the nail. The trimming of toenails by cutting or grinding is not considered debridement.

   c.  Medicare will reimburse for routine foot care for specified reasons, however, including when a beneficiary has a systemic condition which results in circulatory problems or areas of diminished sensations in the legs or feet. Specific medical findings, in addition to the systemic condition, must be present and noted by a health care provider.

      d.      Medicare will also reimburse for routine foot care when the beneficiary has mycotic toenails.

      e.      Mycosis is a fungal infection causing thickened and brittle nails.  A mycotic nail is typically discolored and thickened and can be crumbly and painful.  The treatment of the fungal infection requires medical intervention, which often includes treatment with a prescription medication.

      f.      The treatment of mycotic nails, including debridement, is reimbursed only under certain circumstances, all of which require medical documentation regarding the condition.

      g.      Medicare reimburses the debridement of between one and five mycotic nails at one rate, designated by CPT code 11720.

      h.      The debridement of six or more nails is designated as CPT code 11721 and receives a higher rate of reimbursement.

      i.      In the absence of a systemic disease or a diagnosis of mycotic nails, debridement is considered routine foot care and thus is not a covered service.

B.     THE SCHEME AND ARTIFICE TO DEFRAUD

     1.      Beginning sometime in 2005, the exact date being unknown to the Grand Jury, and continuing until the present, in the Western District of Louisiana and elsewhere, the defendant, EDOZIE C. OKEREKE, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicare, a healthcare benefit program, and to obtain by means of materially false and fraudulent pretenses, representations, and

promises, money owned by or under the custody or control of Medicare, in connection with the delivery of or payment for health care benefits, items, or services, which scheme is further described in the following paragraphs.

2.      The primary object of the scheme and artifice to defraud was to obtain money to which the defendant, EDOZIE C. OKEREKE, was not entitled. This object was to be accomplished by submitting fraudulent claims for reimbursement to Medicare.

3.      It was a part of the scheme and artifice to defraud that the defendant, EDOZIE C. OKEREKE, submitted claims to Medicare, falsely representing that he had performed covered podiatric services.

4      It was a further part of the scheme and artifice to defraud that the actual podiatric services provided by the defendant, EDOZIE C. OKEREKE, consisted of routine nail trimming and routine foot care.

5.      It was a further part of the scheme and artifice to defraud that, in billing Medicare for podiatric reimbursement, the defendant, EDOZIE C. OKEREKE, fraudulently represented that beneficiaries' medical records and other documentation were complete and updated and would support the podiatric services he claimed to have performed.

6.      It was a further part of the scheme and artifice to defraud that the defendant, EDOZIE C. OKEREKE, fraudulently billed Medicare for examinations and services he purportedly provided to beneficiaries, knowing he had not actually provided such examinations and services.

7.      It was a further part of the scheme and artifice to defraud that the defendant,

EDOZIE C. OKEREKE, falsely represented the level of service provided and/or the complexity of service provided to a beneficiary in order to claim a higher E&M code, which resulted in a greater reimbursement amount.

8.      It was a further part of the scheme and artifice to defraud that the defendant, EDOZIE C. OKEREKE, fraudulently submitted claims for reimbursement in which he used modifier 25, which resulted in a greater reimbursement amount.

9.      It was a further part of the scheme and artifice to defraud that, in order to receive a greater reimbursement amount from Medicare, the defendant, EDOZIE C. OKEREKE, fraudulently submitted claims to Medicare which reflected treatment for an inflated or fictitious number of mycotic toenails, for which he claimed a beneficiary required treatment.

10.     It was a further part of the scheme and artifice to defraud that the defendant, EDOZIE C. OKEREKE, submitted reimbursement claims to Medicare for podiatric services in the amount of $3,004,080.84.    As a result, the defendant, EDOZIE C. OKEREKE, has received $2,053,016.26 in reimbursement from the Medicare program.

C.      THE HEALTH CARE FRAUD

On or about the dates set forth below, the defendant, EDOZIE C. OKEREKE, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, did submit and cause to be submitted claims to Medicare for the designated beneficiaries, to obtain by means of false or fraudulent pretenses, representations and promises, money and property owned by or under the custody and control of Medicare, a health care benefit

program, in connection with the delivery of and payment for health care benefits, items or services, as set forth in counts one through sixteen below:

| COUNT | BENEFICIARY | DATES OF SERVICE | AMOUNT BILLED | AMOUNT PAID |
|---|---|---|---|---|
| 1 | W. A. | 4/18/06 - 7/11/08 | $672.32 | $535.22 |
| 2 | F. A. | 2/24/06 - 7/11/08 | $1,553.07 | $1,082.10 |
| 3 | S. C. | 10/9/06 - 10/12/08 | $508.66 | $311.47 |
| 4 | R. C. | 3/15/06 - 2/13/08 | $663.19 | $523.29 |
| 5 | A. C. | 1/14/07 - 9/16/08 | $465.32 | $366.43 |
| 6 | W. D. | 7/18/07 - 8/15/08 | $325.72 | $189.70 |
| 7 | T. F. | 5/11/06 - 9/16/08 | $448.77 | $242.09 |
| 8 | C. L. | 4/18/06 - 7/11/08 | $825.53 | $634.25 |
| 9 | L. L. | 3/15/06 - 12/6/08 | $982.74 | $762.56 |
| 10 | E. M. | 2/24/06 - 9/8/08 | $728.79 | $569.95 |
| 11 | A. M. | 9/11/06 - 4/16/08 | $496.76 | $372.84 |
| 12 | C. M. | 2/6/06 - 9/8/08 | $659.56 | $436.93 |
| 13 | M. S. | 2/24/06 - 9/8/08 | $549.83 | $434.05 |
| 14 | V. S. | 2/6/06 - 9/8/08 | $611.19 | $475.88 |
| 15 | C. T. | 4/21/06 - 8/20/08 | $687.20 | $530.70 |
| 16 | J. W. | 7/23/07 - 7/11/08 | $263.58 | $208.22 |

All in violation of Title 18, United States Code, Section 1347.  [18 U.S.C. § 1347]

## NOTICE OF FORFEITURE
18 U.S.C. § 982(a)(7)

A.      The allegations contained in Counts One through Sixteen of this Indictment are realleged and incorporated as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

B.      As a result of the violations of Title 18, United States Code, Section 1347, as alleged in Counts One through Sixteen of this Indictment, the defendant, EDOZIE C. OKEREKE, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts One through Sixteen of this Indictment, such property including but not limited to the $7,675.68 involved in the offenses described in Counts One through Sixteen or equivalent deposited funds and all interest and proceeds traceable thereto.

C.      If any of the property described above, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section

982(b)(1)(A) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, EDOZIE C. OKEREKE, up to the value of the property identified above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).  [18 U.S.C. § 982(a)(7)]


A TRUE BILL:


STEPHANIE A. FINLEY
UNITED STATES ATTORNEY

Robin S. McCoy (La. Bar No. 30042)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101-3068
318-676-3600